THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LOUIS T. GILL, Defendant.

Court of Special Sessions held by a City Magistrate of the City of New York, Borough of Queens, October 8, 1954.

*Joseph T. McDonough* for plaintiff.

*John A. Dwyer* for defendant.

*Direnzo & Martoccia, amici curiæ.*

DEL GIORNO, M. This action was tried before me sitting as a Court of Special Sessions. By stipulation on the record the parties agreed that this court's decision would be extended to a number of similar cases, also represented by the same attorney.

After the case was tried a request was made to the court by Direnzo & Martoccia, Esqs., for permission to file a memorandum of law, as friends of the court, on behalf of a client whose business is similar to the defendants. The court gladly accepted the proffered aid. All the parties have submitted splendid and helpful briefs. The facts are very simple. The defendant is secretary of the corporation owning a commercial auto laundry. He is charged with permitting his employees to wash, under his supervision, three automobiles on a Sunday in violation of section 2143 of the Penal Law.

The charge is not contested but the defendant claims that washing cars on Sunday is labor of necessity in this age of automobiles.

Section 2143 of the Penal Law, which is the law in question reads: "*Labor prohibited on Sunday.* All labor on Sunday is prohibited, excepting the works of necessity and charity. In works of necessity or charity is included whatever is needful during the day for the good order, health or comfort of the community."

In their brief the People contend that the language of the statute is clear and concise; that the evident object of section 2143 is to prevent the day from being employed in servile work. (*Landers* v. *Staten Is. R. R. Co.,* 13 Abb. Prac. [N. S.] 338.)

The People further assert that car washing as a business on a Sunday is not a work of charity or necessity. They contend that while a clean windshield and clear-view glass is essential to safe driving it is not necessary that the entire car be washed in order to guarantee safety of operation. By inference the People contend that that chore can be easily performed by the driver.

The People further argue that in order for the defendant to come within the exception of " necessity " under section 2143, the necessity must be that of the one who labors and cannot be transferred to anyone else. They state that while the operator may clean his windshield as a necessity, he may not transfer that operation to the auto laundry to do it for him for a fee. That would be a purely business transaction, and hence a violation of the statute. The People refer to a series of cases, to support their contention that the question of car washing as a business on a Sunday has already been adjudicated by the appellate courts which have sustained convictions under the statute. (*People* v. *Gowa,* 275 App. Div. 686; *People* v. *Singer,* 278 App. Div. 714.) The latter was a unanimous affirmance by the Appellate Division, and permission to appeal to the Court of Appeals was denied by Judge FULD on May 11, 1951. The People also refer to an opinion of the Attorney-General (51 N. Y. St. Dept. Rep. 239), in which the Attorney-General declared in the year 1934 that car washing in a commercial auto laundry on Sunday constituted a violation of the Sabbath. The People also refer to the case of *People* v. *Schelberg* (204 Misc. 733), in which case a distinguished colleague of the court, Magistrate MAHONEY, also held in favor of the People.

For his part the defendant contends that prior decisions holding that car washing on Sunday is not a necessity were based upon opinion and the lack of information and should not

be followed; thus the defendant says that the *Gowa* and *Singer* cases (*supra*) were based solely upon opinion influenced by a puritanical concept of Sunday observance.

In addition, the defendant affirms that car washing is a health aid and public service — it involves the removal of all dust, dirt, filth, oil and grease from the body of the car, which is trapped and removed by the laundry owner and does not find its way into the city sewers, thus lessening the burden of the sanitation department, a public agency.

In addition thereto the defendant contends that car washing is an aid to safety in that the said auto laundries in winter, in the act of washing cars, remove all snow, ice-embedded fragments of tire chains and other pieces of metal, thereby removing one of the many hazards of winter driving.

The defendant makes a final point when he asserts that in its control of bus and taxi franchises the city of New York requires that such be kept clean, sanitary and in good mechanical condition at all times, particularly the interior thereof. (Rules & Regulations of N. Y. City Agencies, ch. 16, Police Dept.; ch. 26-A, Dept. of Traffic, art. 1, § 1, subd. 15.)

The final conclusion drawn by the defendant is that the Sunday laws are inconsistent because different fines and punishments are provided for violations committed by different trades or businesses.

The attorneys appearing herein *amici curiæ,* on behalf of D. and G. Service Station, located at 33–34 21st Street, Astoria, while agreeing generally with the defendant's position, for their part advanced the argument that section 2143 is not violated by washing cars on Sunday since car washing is not specifically prohibited by the section and, by inference, they contend that what is not prohibited specifically may not be prohibited at all.

Thus, they assert that the mere fact that car washing on Sunday is not *eo nomine* listed as a permissive act in the statute, said statute does not necessarily exclude or prohibit it.

The court is of the opinion that the parties hereto have raised factual points which were not advanced in cases previously reported. Only for that reason does this court feel justified in writing its own opinion rather than rejecting or accepting previous decisions in making its determination herein.

The court believes that without any doubt section 2143 of the Penal Law derives from the words of the Old Testament which have made Sunday acceptable by our civilization as a precept of conduct and a day of meditation and rest from the necessary

labors and pursuit of gains by each individual. In chapter 2 of Genesis, the Bible says: " And on the seventh day God ended his work which he had made; and he rested on the seventh day from all his work which he had made. And God blessed the seventh day, and sanctified it ".

The defendant, while not denying the necessity and appropriateness of such a law contends that the law has been liberalized in many ways by our State Legislature, such as permitting baseball on Sundays. The court can add that movie houses are opened, concerts are given, etc., which may be considered in derogation of the law, but in the court's opinion these, in one way or another come within the meaning of good order, health, or comfort, and therefore, in conjunction with such intent of the law the labor performed by those engaged therein is one of necessity. The legislative trend has been to afford in a positive way to each individual, and especially the worker, a day away from the demands of the employer, in furtherance of the Biblical injunction that the seventh day belongs to the individual to use it to relax, meditate and refresh himself.

Previously our laws specified " servile " labor as prohibited on Sunday. However, since " servile " was restrictive of the meaning of the word labor it was eliminated by an amendment to the law in the year 1883. So that today prohibited labor is not limited to business or trade but is extended to all labor which is not specifically exempted. (*People ex rel. Briggs* v. *Owen,* 92 Misc. 254.)

Not many years ago the butchers and barbers were opened seven days a week. Those were days of hard work and little income, with no fun, rest or meditation for those people. When the law went into effect prohibiting shaving by barbers on Sundays, many a male person saw himself deprived of the privilege to look his best on that day. Doctors felt that they would be embarrassed when calling on their patients, swains would have to forego calling on girl friends, males would not be seen in churches and theatres, elders would not take the young ones to the zoo for fear of unfavorable comparisons with the alleged simian cousins. This is said in a light vein, but it was true, nevertheless. However, the world kept on moving. Men bought safety razors and learned to shave themselves on Sundays. But even more interesting, these trades put their collective wits together, organized, both employers and employees, and conditions of labor and remuneration steadily improved so that today both employers and employees in those trades await the seventh day of the week to enjoy it in the same manner

as their neighbors. In like manner people never missed their roast beef on Sundays. They learned to purchase their meat supplies on Saturday.

The words " labor " and " necessity " in Webster's Dictionary are defined as follows: Labor; physical or mental work; toil; that which requires effort for its accomplishment. Necessity; that which is unavoidable because compelled, inevitable or the like; a requisite; an indispensable.

The defendant's contention, on the one hand, that decisions upholding the law were based upon puritanical conception, and on the other, that car washing on Sunday is an aid to safety, and a public service, calls for a rebuttal. Such decisions in the opinion of this court were not puritanical, but interpretative of the law based upon the common understanding of the meaning of the words " labor " and " necessity ". The Judges in those cases applied to the facts the same test that the average common sense human being would apply, and law is really just plain common sense judiciously applied.

The contention that trapping and removing dirt from cars and carting it away represents a public service is erroneous. It merely complies with the administrative regulations of the community because the issuance of a certificate of occupancy is based upon setting up proper trapping and removal of dirt, etc. There is no denying that car washing facilities furnish a service to the public which is most useful, if only for the very fact that today we are in a true sense a nation on wheels. No one can question the usefulness of these laundries. But are they performing a labor of necessity on Sunday? The answer is no. It would be a delightful sight to sit alongside one of our parkways on a Sunday and watch the thousands of cars streaming by all aglow with a new wash, but that is not a necessity, although it would bring esthetic pleasure to the eyes.

The necessary thing for an auto to have on Sundays is gas, oil, water and a fairly clean windshield. Each one of us who drives can easily wipe the windshield if we want to, but if we are not so inclined these services are furnished at all gas stations without charge except for gas and oil. Without gas, oil and water and a clean windshield, a wash of the car would bring no comfort to a family wishing to travel; with these, but with no car wash the family can still enjoy a comfortable traveling day.

It is also true that the City of New York maintains a tight and proper control over public hack and sightseeing bus drivers who are required to maintain their vehicles and particularly the

interior thereof, clean and in good condition at all times. However, the city does not prescribe that vehicles for public conveyance be washed on Sundays; it requires that they be kept clean every day of the week for the comfort of those using the same. These are conditions imposed as part of the franchise granted to transport our public for profit. A whisk broom and a piece of cloth can bring about compliance with the law.

The further argument of the defendant that if the Legislature intended to prohibit car washing on Sunday, it would have specifically said so, is without foundation. The Legislature is the interpreter of the moral law. It defines a crime or a violation either by use of a word descriptive of such, or a combination of words, whichever is necessary to spell out its intent in accordance with the *mores* and social standard of the time. Its responsibility is to all the people. Thus like the parent in a family it prescribes generally what may be done or not by the members of that family for the major good of all. It cannot conceivably set out, as in our case, all acts which may be considered labor or works of necessity permitted on Sunday. The exceptions, however, must be specific. Those are definite prerogatives granted to and which the citizens may assert for their definite protection. Those acts which are prohibited are described in general and in comprehensive terms which the lawmakers believed have a general tendency to interfere with Sunday as a day of rest and religious worship. (*People* v. *Moses,* 140 N. Y. 214.) As these acts occur it is the duty of a court to determine what is labor which is prohibited within the meaning of the law. Thus the Legislature and the courts complement each other. While the courts will not hesitate to declare a law unconstitutional they will also readily declare it valid where either the context or the words or wording of a particular law are clear and understood by the common man and not violative of men's basic natural rights.

In this court's opinion "labor" means work for gain or living — commercial car washing is that. "Necessity" means that which is required or needful to accomplish a lawful purpose — washing cars on Sunday is not required to drive a car for a trip or pleasure. "Good order, health or comfort" means an act without which the community would not have contentment, peace or quiet.

When the community or a group thereof decides that it cannot be happy and comfortable without commercial car washing on Sunday it has the right to request of our representatives in the Legislature a change in the law. This large and useful group

of our citizens, the commercial car laundry operators, expecting a court to challenge the power of the Legislature should itself address its petition and arguments to the Legislature to change the law in the manner which would except their calling from its inhibitions.

Inasmuch as the commercial car washing business is rather widespread and generally acceptable within the city of New York, the appeal to the Legislature, if any, may be made for permissive legislation which could be implemented by a local law. Their appeal might meet with more approval than they anticipate since Governor DEWEY himself, in the annual message of 1952 (p. 26), declared that the " present provisions (of the Sabbath Law) create an illogical and inconsistent pattern."

For the reasons above given the court finds the defendant guilty as charged.